UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| PRIMA EXPLORATION, INC., a Colorado corporation, | ) ) ) | Civil No. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DARRYL LACOUNTE, in his official capacity as Director, United States Bureau of Indian Affairs, BUREAU OF INDIAN AFFAIRS, ENERPLUS RESOURCES (USA) CORPORATION, a Delaware Corporation, and PETROSHALE (USA) INC., a Delaware Corporation, BUREAU OF INDIAN AFFAIRS, AS TRUSTEE FOR THE HEIRS OF MADELENE BRUCE, DECEASED, KEVIN BRUCE, LYNN T. BRUCE, RONELLE M. BRUCE, TODD BRUCE, JUSTIN L. BRUCE, LISA G. BRUCE,  CHERYLE DANKS, SHELDON J. HAND, DEBORAH A. PAINTE, ZACHIERY J. SITTING CROW, and CAROL J. WALKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) ) | |

Plaintiff Prima Exploration, Inc. ("Prima") hereby files its Complaint.

Prima alleges, states and demands as follows:

## NATURE OF THE CASE

1.      Prima owns an interest in an oil and gas lease covering 320 acres of allotted Indian trust lands within the Fort Berthold Reservation.  Prima's interest in the lease has long been a matter of public record – and well-known to the Defendants.  Despite this ownership, and unbeknownst to Prima, Enerplus Resources (USA) Corporation ("Enerplus") quietly worked with certain officials of the Bureau of Indian Affairs ("BIA") in an attempt to break Prima's lease and to secure those rights for itself.  As a result of those efforts, on December 17, 2013, the BIA approved a new lease to Enerplus – covering 240 acres of Prima's existing lease.  Only then did the BIA send Prima a notice that it had "segregated" and "terminated" Prima's lease as to the 240 acres leased to Enerplus.  On January 28, 2014, Prima timely appealed the BIA's decision.

2.      Two years later – while Prima's appeal was still pending – the same secret process unfolded again.  This time, it was PetroShale (USA) Inc. ("PetroShale") that conspired with the BIA to deprive Prima of the remaining 80 acres of its lease.  Once again, PetroShale worked secretly with the BIA for months.  Once again, on December 18, 2015, the BIA approved a lease – this time in favor of PetroShale – without prior notice to Prima.  Once again, and only then, did BIA *purport* to send a notice to Prima terminating its lease as to the remaining 80 acres – a notice which Prima did not receive.

3.      This case involves egregious violations of established law and procedure, as well as clear violations of Prima's due process and property rights. Prima brings this lawsuit seeking a declaration that Prima's interests in the lease have not been segregated or terminated and for a judgment in the amount of all damages caused by this wrongful conduct.  Prima also requests that further development of the minerals covered by the Prima Lease be stopped and that any revenues generated by development of the minerals be placed with a third person or entity, acceptable to Prima and the Court, pending final resolution of this litigation.

## FACTUAL BACKGROUND

4.      Prima is the current holder of BIA Lease 1-32-IND-7032, an oil and gas lease within the Fort Berthold Reservation.  ("Prima's Lease").  The lease covers 320 acres located in the south half of section 16 of Township 152 North, Range 94 West (McKenzie County) (BIA Tract 301M561A).

5.      Prima's lease was approved by the BIA in 1952 and has been held by production since 1958.  Prima's leasehold interest is a property interest subject to all the protections of law, including due process protections as guaranteed by the United States Constitution.

6.      The Defendants in this case, at all relevant times, have been fully aware of Prima's Lease and of Prima's property interest.  Prima's Lease has been

of record title since 1952.  BIA title status reports generated in 2013 and 2015 clearly describe Prima's Lease as a present encumbrance against Tract 301M561A. Indeed, the BIA officials directly involved in this case understood and recognized in writing that the acreage and minerals at issue were "leased by Prima under Lease Number 7420A47032 . . . ."

7.    Despite these facts, and despite Prima's property interest, Defendants have worked together in an effort to interfere with, trespass upon, and convert Prima's rights.  These efforts have been, for the most part, done with deceit, with improper intent, and have been conducted in secret from Prima.  For example:

a.    Enerplus and PetroShale worked in secret with BIA officials in order to have the Prima's Lease declared "segregated" and "terminated" and to lease the exact same acreage and minerals to Enerplus and PetroShale.

b.    As a matter of fact, and without proper notice to Prima, on December 17, 2013, the BIA declared a portion of Prima's Lease (80 acres – the W½SW¼ of Section 16) "segregated" and declared the rest of the lease (240 acres – the E½SW¼ and SE¼ of Section 16) "terminated."  That same day, BIA approved a lease of those same 240 acres to Enerplus.

c.    The decision to improperly terminate Prima's Lease was not based upon the language of Prima's Lease, the language of the applicable Unit Agreement, or the law, but rather, the decision was based upon the urging of

Enerplus and a misguided belief by certain BIA officials that consolidating leasehold ownership in one oil company would encourage development of the lands legally encumbered by the lease.  Indeed, an official at the BIA advocated for the termination of Prima's Lease because "Enerplus is trying to gain majority acreage position [in the Antelope Field (an area that includes Prima's Lease)] and because the "diverse lease ownership in the Antelope Field has slowed development."

   d. A review of internal BIA documents also reveal that the improper termination of Prima's Lease was not done in consideration of Prima's rights, but rather, was done in order "to bring in [other] operators."  Similarly, the decision to approve the illegal Enerplus lease was based upon the unfounded belief that a behind-the-scenes "offer" by Enerplus was "in the best interest of the mineral owner . . . ."   The decision to approve the Enerplus lease was not only wrong for mineral owners on the Fort Berthold Reservation, it was illegal.

   e. On or about October 15, 2014, Prima sent a landman to the Fort Berthold Agency Office to inquire about rumors that Enerplus had acquired a BIA approved oil and gas lease covering Prima's lands in Section 16.  BIA officials informed the landman that Enerplus had a new lease, but that it did not conflict with Prima's Lease.  The officials also insisted that the BIA could not release more information without permission from Enerplus.

       f.     The misconduct did not end with Enerplus.  A review of the administrative record disclosed much later reveals that on July 15, 2015, a Vice President at PetroShale emailed an official at the BIA requesting an opportunity for PetroShale to "[m]eet with you first to present our case as to why we believe certain lands" subject to existing BIA-approved leases (including Prima's) "are now open for lease."  The meeting was set for July 21, 2015, and, upon information and belief, the meeting occurred on that date.  Prima was told nothing about the meeting.

       g.     On October 21, 2015, PetroShale emailed the BIA asking whether the BIA was "anywhere near a decision" on approving PetroShale's proposed leases.  As both the BIA and PetroShale were aware, approval of the PetroShale lease would necessarily require the segregation and termination of the last 80 acres of Prima's Lease that had not already been clouded by the earlier conduct of the BIA and Enerplus.

       h.     As part of its efforts to interfere with Prima's Lease, and as reflected in its October 21, 2015 email, PetroShale went so far as to provide an advocacy memorandum urging BIA to consider the Prima lease segregated (this time vertically by mineral formation) and terminated.  PetroShale stated that such a decision, and the contemporaneous approval of the PetroShale lease, would result in a "windfall" due to an increased royalty.  The advocacy memorandum contained

misrepresentations of both law and fact. Prima was told nothing about the memorandum, and therefore had no opportunity to address its misrepresentations.

i.     On December 18, 2015 the BIA acted upon PetroShale's influence and "segregated" and "terminated" Prima's remaining 80 acres in the Prima Lease. Notice of this decision to terminate a portion of the Prima Lease was never sent to, and/or was never received by Prima. The BIA's decision to terminate a portion of the Prima Lease was not based upon the law, or the leasing instruments at issue, but rather, was based upon the urging of PetroShale and because of "the current downturn in oil prices . . . ."

j.     On December 19, 2015, the same day that the BIA decided to segregate and terminate Prima's remaining 80-acre lease, the BIA approved a lease of those same 80 acres to PetroShale. BIA took this action - without notice to Prima - even though a BIA title status report, dated December 19, 2015, correctly demonstrated that at that very moment, the acreage and minerals were under lease to Prima.

k.     Prima timely appealed to the BIA the decisions to segregate and terminate Prima's Lease. Prima also timely appealed the decisions to approve of the Enerplus and PetroShale leases. The BIA's "Automatic Stay" regulation at 25 C.F.R. § 2.6, automatically stays the legal effectiveness of a BIA decision while an appeal is pending, thereby rendering such decision of no force or effect until

conclusion of the appeal.  Therefore, Prima's Lease has remained in full force and effect to this day.  Yet, despite Prima's repeated pleas, both the BIA and the IBIA have ignored the Automatic Stay, and have allowed Enerplus and PetroShale to drill, operate and produce Prima's Lease. Likewise, on October 28, 2014, Prima filed a Lis Pendens against the Prima lease acreage, describing Prima's interest, and giving notice to all operators, including Enerplus and PetroShale, of Prima's rights in the lease.  Enerplus and PetroShale have ignored those legal warnings and have acted at their own peril in leasing the property and in continuing to develop the illegal leases.

8.    As a result of the above, Prima currently holds BIA Lease 1-32-IND-7032, an oil and gas lease within the Fort Berthold Reservation.  Defendants are, and have been, on both actual and record title notice of Prima's rights in the lease. Despite this notice, BIA has improperly leased these lands to Enerplus and PetroShale.  Despite this notice, and with the BIA's approval and consent, Enerplus and PetroShale have improperly developed wells on those leases.

9.    In May of 2018, Prima filed an action in this Court (Case No. 1:18-cv-116) (the "Prior Action") asserting various claims against the BIA for its unlawful segregation and termination of Prima's lease. Prima also asserted multiple common law claims against Enerplus and PetroShale for their intentional interference with Prima's vested property rights. Prima further sought a preliminary injunction

against the BIA, Enerplus and PetroShale requesting this Court to halt future oil and gas development on the lands covered by the Prima Lease, and to order the placement of all production proceeds attributable to Enerplus and PetroShale's unlawful development of the subject premises into escrow pending the resolution of Prima's claims.

10.    Following extensive briefing, this Court dismissed the Prior Action without prejudice on October 1, 2018, citing Prima's alleged failure to exhaust its administrative remedies prior to bringing suit in federal court.

11.    Following the dismissal of the Prior Action and pursuant to 25 C.F.R. § 2.8, Prima submitted a Notice of Appeal of the Regional Director's inaction relating to the January 28, 2014 appeal to the IBIA on October 15, 2018.  As anticipated, the IBIA issued a Pre-Docketing Notice and Order to Show Cause (the "Order to Show Cause") citing the above-described communications from the Regional Director, among others, and noting that it appears that the BIA was actively working on Prima's request for action on the January 28, 2014 appeal. The Order to Show Cause directed Prima to submit briefing on or before November 27, 2018 as to why its appeal of the Regional Director's inaction should not be dismissed as premature.

12.    Of importance, and entirely outside the normal and usual course of an appeal, on September 13, 2018, the then-Acting Regional Director of the BIA

"supplemented" the administrative record to include additional materials. Within

these "supplemental" materials were two decades-old documents that the Acting

Regional Director had "retroactively approved" <u>just the week before</u>. In examining

these documents, Prima's attorneys realized that the BIA's "retroactive approval"

was designed to go <u>49 years</u> back in time and <u>alter</u> the BIA-approved chain of title

so as to ultimately <u>divest</u> Prima of its interest in the Prima Lease. In other words,

the BIA had "retroactively" altered not only <u>the administrative record</u> but also

Prima's <u>chain of title. Incredibly, this was again done in secret, and this time,</u>

<u>during</u> the pendency of an appeal and <u>after</u> the matter had been fully briefed.

13.    Prima promptly demanded an explanation and basis for the

"retroactive approvals." None was forthcoming. Therefore, Prima timely appealed

the Acting Regional Director's "retroactively approval" to the IBIA on October 15,

2018. This appeal was docketed as IBIA Docket No. 19-011. Pursuant to the BIA's

"Automatic Stay" regulation, filing of this appeal immediately stayed the Acting

Regional Director's "retroactive approvals," rendering them a legal nullity pending

conclusion of the IBIA appeal.[1]

14.    On November 20, 2018, the Acting Regional Director, issued her

decision on Prima's January 28, 2014 appeal (the "Regional Director's Decision").

Nearly five years after Prima had filed its appeal – <u>but only weeks after modifying</u>

---

[1] 25 C.F.R. § 2.6.

the administrative record, the Acting Regional Director affirmed the BIA's decision to segregate and partially terminate Prima's lease.[2]  In doing so, the Acting Regional Director entirely rejected the BIA's original rationale.  Instead, she relied exclusively upon the legal effect of the documents that she had "retroactively-approved" just weeks before.  In other words, she based her decision on her own alterations to the administrative record, again unlawfully ignoring the Automatic Stay which rendered that "retroactive approval" of no legal force or effect.  On top of all of that, she affirmed the BIA's December 18, 2015 decision to terminate the remainder of Prima's Lease – the subject of an entirely separate appeal.

15.    Prima timely appealed the Regional Director's Decision to the IBIA on December 18, 2018.  This appeal was docketed as IBIA Docket No. 19-032. On March 29, 2019, the IBIA consolidated Prima's appeals into one case.  Briefing in this case has been complete since January 30, 2020.  In its opening brief, Prima alerted the IBIA to the fact that the BIA was unlawfully causing it extreme harm and prejudice by ignoring the Automatic Stay, and requested that the IBIA prioritize this case.  Prima repeated this request on August 6, 2019.  Prima's pleas to expedite fell on deaf ears – briefing has now been complete for over two and a half years, and the IBIA has not yet rendered a decision.  Prima's attorneys

---

[2] The issuance of this decision resulted in the dismissal of Prima's October 15, 2018 appeal of

contacted the IBIA on May 25, 2022 to inquire as to the status of the appeal and were informed that the case was the 40th of 92 cases to be decided upon in chronological order.  On, August 8, 2022, Prima's attorneys again contacted the IBIA and, despite the passage of over two months, was informed the appeal was still the 40th of 92 cases to be decided.  The undersigned attorneys are aware that other cases have been pushed ahead of Prima's appeal.[3]

16.    Prima has been prejudiced first by the extended delays within the BIA and now the extended delay of the IBIA.  Given that briefing was complete two and a half years ago, that Prima has remained number 40 in the queue for three months, and that cases are being pushed ahead of Prima, there can be no reasonable expectation that the IBIA will issue a decision until it is too late.  Of course, all this prejudice has been compounded by the fact that the Automatic Stay has been unlawfully ignored in all respects.

17.    As a result of the above, Defendants have caused Prima damages in the form of lost revenue, lost opportunity and lost profits.  Defendants' development of the minerals covered by Prima's Lease have also caused Prima irreparable harm including damage to Prima's relationship with landowners and damage to the mineral formations at issue.  Indeed, by the time the legal quagmire

---

the BIA's inaction on the basis of mootness.
[3] *See Osage Minerals Council*, 68 IBIA 182 (July 11, 2022), which was filed with the IBIA two and a half years after Prima's December 18, 2018 appeal, and was decided on July 11, 2022.

caused by the BIA, IBIA, Enerplus and PetroShale is resolved, the natural resource at issue may be depleted.

18.    Prima is not required to exhaust further proceedings before the IBIA or BIA because, among other things, legal issues predominate, further proceedings before the IBIA and BIA would be futile, and the delay (over 8 years) in issuing a final ruling on Prima's appeal of the original segregation and termination decision, together with the BIA's repeated refusal to abide by the Automatic Stay mandated by its own regulations, continue to violate Prima's Due Process Rights.  Further, the demonstrated agency bias against Prima before remand from this court – and the continuing extreme bias following that remand – render justice possible only in an open court of law.  By its actions in this matter, the Department of Interior has abundantly and repeatedly demonstrated that it has "too much to lose" in this matter.  In addition, the administrative process will do nothing to resolve Prima's common law claims against Enerplus and PetroShale.

## JURISDICTION

19.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 (federal question) and 28 U.S.C § 2201 (declaratory relief).

## VENUE

20.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(e)(1)(B).

## PARTIES

21.    The BIA is an agency within the executive branch of the Federal Government.

22.    Darryl LaCounte is joined in his official capacity as Director, United States Bureau of Indian Affairs.

23.    Enerplus is a Delaware Corporation with its principal place of business in Colorado.

24.    PetroShale is a Delaware Corporation with its principal place of business in Colorado.

25.    The heirs of Madelene Bruce, deceased, Cheryle Danks, Kevin Bruce, Sheldon J. Hand, Lynn T. Bruce, Deborah A. Painte, Lisa G. Bruce, Zachiery J. Sitting Crow, Todd Bruce, Carol J. Walker, Justin L. Bruce, and Ronelle M. Bruce, are mineral owners with an interest in the disputed leasehold.

26.    Prima is a Colorado corporation with its principal place of business in Colorado.

## FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT AS AGAINST BIA

27.    Prima incorporates by this reference all preceding paragraphs.

28.    The actions taken in this case by the BIA have been arbitrary, capricious, in violation of the law and in excess of statutory jurisdiction.

29.     The actions taken by the BIA have caused a real and substantial

dispute between Prima and BIA regarding Prima's rights in Prima's Lease and in

the disputed leasehold.

30.     As a result, Prima is entitled to an order setting aside and vacating the

BIA's decisions "segregating" and "terminating" Prima's Lease and a declaration

that Prima's Lease is valid, is in full force and effect, and has not in any way been

"segregated" or "terminated."

**SECOND CAUSE OF ACTION:**
**VIOLATION OF PRIMA'S DUE PROCESS RIGHTS AS GUARANTEED**
**BY THE UNITED STATES CONSTITUTION**

31.     Prima incorporates by this reference all preceding paragraphs.

32.     The Fifth Amendment to the United States Constitution provides that

"no person shall be deprived of life, liberty, or property without due process of

law." Due process has long required that when a party stands to suffer a

deprivation of a liberty or property interest, it has a right to notice and an

opportunity to be heard. Further, due process protections require a citizen – such

as Prima – to be free from arbitrary, capricious and illegal actions and to be free

from interference with those rights implicit in the concept of ordered liberty.

33.     The BIA decisions in this case, as outlined above, were arbitrary,

capricious, and were in violation of the law. The BIA decisions were contrary to

15

the law, to the language of the leasing documents at issue, and to the language of the unit agreements approved by the BIA.

34.    Further, and in the alternative, to the extent the BIA relied upon statutes and / or regulations in its decision to "segregate" and "terminate" Prima's Lease, and thereafter approving leases to Enerplus and PetroShale of the same lands and minerals, those statutes and regulations are contrary to law and are unconstitutional.

## THIRD CAUSE OF ACTION:
## REGULATORY TAKING AS AGAINST BIA

35.    Prima incorporates by this reference all preceding paragraphs.

36.    The Fifth Amendment to the United States Constitution provides, in pertinent part, that private property shall not be taken for public use without just compensation.

37.    Prima has a property interest in Prima's Lease.

38.    In the alternative to other claims, the BIA decisions in this case, as outlined above, constitute a taking of private property without just compensation contrary to the Fifth Amendment of the Constitution of the United States of America.

## FOURTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT AS AGAINST BIA

39.     Prima incorporates by this reference all preceding paragraphs.

40.     There exists a dispute between Prima and BIA regarding Prima's rights in Prima's Lease and in the disputed leasehold.

41.     The dispute is real and substantial.

42.     BIA's automatic stay regulation, 25 C.F.R. §2.6(a) requires that the BIA continue to recognize Prima's Lease and legal interests as valid and in full force and effect pending a final decision on the underlying leasehold dispute.

43.     BIA has ignored its own regulations and treated the Enerplus and PetroShale leases as valid by, among other actions, approving leases, approving drilling permits and approving communitization agreements, and allowing royalty payments to be made pursuant to, and/or accepting royalty payments per the terms of, the Enerplus and PetroShale leases.

44.     The BIA's failure to recognize Prima's Lease as valid, and its failure to deny Enerplus and PetroShale the right to benefits under their competing and invalid leases, constitutes a blatant disregard for its own regulations and is contrary to law.

45.     The interests of Prima will be affected by a declaration of the rights of Prima and such a judicial determination will provide relief to the dispute.

46.    Prima is entitled to a declaration that Prima's Lease remains valid and in full force and effect pending a final decision per 25 C.F.R. § 2.6.

## FIFTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT AS AGAINST ALL DEFENDANTS

47.    Prima incorporates by this reference all preceding paragraphs.

48.    There exists a dispute between Prima and Defendants regarding Prima's rights in Prima's Lease and in the disputed leasehold.

49.    The dispute is real and substantial.

50.    Prima and Defendants have adverse legal interests with respect to the lands and leasehold at issue.

51.    The interests of Prima and Defendants will be affected by a declaration of the rights of Prima and Defendants and such a judicial declaration will provide relief to the dispute.

52.    Prima is entitled to a declaration that Prima's Lease is valid, is in full force and effect, and has not in any way been "segregated" or "terminated."

## SIXTH CAUSE OF ACTION:
## TRESPASS AS AGAINST ENERPLUS AND PETROSHALE

53.    Prima incorporates by this reference all preceding paragraphs.

54.    Prima has legal interests in the lands and leasehold at issue.

55.    Defendants Enerplus and PetroShale intentionally or voluntarily entered onto those leasehold properties and interfered with Prima's use and enjoyment of those properties.

56.    Defendants Enerplus and PetroShale made those entries without Prima's consent or any privilege and they continue to do so.

57.    The willful trespass of Defendants Enerplus and PetroShale have caused harm to Prima and continue to do so.

58.    That conduct has proximately caused damages to Prima.

## SEVENTH CAUSE OF ACTION:
## CONVERSION AS AGAINST ENERPLUS AND PETROSHALE

59.    Prima incorporates by this reference all preceding paragraphs.

60.    Prima has legal interests in the lands and leasehold at issue which include the right to develop oil and gas and receive production proceeds derived therefrom.

61.    Prima has a legal right to control those lands and leasehold interests.

62.    Enerplus and PetroShale have intentionally exercised wrongful dominion or control over those lands and leasehold interests.

63.    The wrongful conduct of Enerplus and PetroShale was inconsistent with, and in defiance of, Prima's rights and deprived Prima of its rights and interest in its property.

64.    That conduct has proximately caused damages to Prima.

## EIGHTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH CONTRACT AND / OR BUSINESS EXPECTANCY AS AGAINST ENERPLUS AND PETROSHALE

65.    Prima incorporates by this reference all preceding paragraphs.

66.    Prima had a valid contractual business relationship and expectancy associated with or arising from its interests in the lands and leasehold at issue.

67.    Defendants Enerplus and PetroShale knew of that relationship.

68.    Defendants Enerplus and PetroShale were not parties to the contracts or business expectancy at issue.

69.    Prima's contractual relationship was breached and its business expectancy was interfered with.

70.    The conduct of Enerplus and PetroShale instigated that breach and interference without justification.

71.    As a result of Enerplus and PetroShale's conduct, Prima's contractual relationship and business expectancy were harmed, and Prima incurred actual damages.

## NINTH CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE AS AGAINST ENERPLUS AND PETROSHALE

72.    Prima incorporates by this reference all preceding paragraphs.

73.    Prima had a valid business relationship and expectancy associated with or arising from its interests in the lands and leaseholds at issue.

74.    That relationship and expectancy was intended to result in economic advantage and benefits to Prima.

75.    Defendants Enerplus and PetroShale knew of that relationship and expectancy.

76.    Defendants Enerplus and PetroShale knowingly committed independent tortious or unlawful acts, thereby interfering with Prima's economic advantage and business expectancy.

77.    Defendants' conduct was detrimental to Prima's economic interests and business expectancy, and Prima incurred damages as a result.

## TENTH CAUSE OF ACTION:
## SLANDER OF TITLE AS AGAINST ENERPLUS AND PETROSHALE

78.    Prima incorporates by this reference all preceding paragraphs.

79.    Defendants Enerplus and PetroShale published statements about Prima's interests in the lands and leaseholds at issue.

80.    Those statements were untrue.

81.    Defendants Enerplus and PetroShale knew the statements were untrue or had no basis to believe the statements were true when they made them.

82.    The statements were of a disparaging nature that could foreseeably impair the value of the lands or leasehold interests in the estimation of others.

83.    Enerplus and PetroShale acted maliciously.

84.     The actions of Enerplus and PetroShale caused economic damages to, and termination or impairment of, Prima's interests.

## ELEVENTH CAUSE OF ACTION:
## UNJUST ENRICHMENT AS AGAINST ENERPLUS AND PETROSHALE

85.     Prima incorporates by this reference all preceding paragraphs.

86.     By and through their misconduct, Defendants Enerplus and PetroShale were enriched.

87.     As a result of Defendants' misconduct, Prima was impoverished.

88.     Defendants' misconduct caused Prima's impoverishment without justification resulting in damages.

## TWELFTH CAUSE OF ACTION:
## ACCOUNTING AS AGAINST ENERPLUS AND PETROSHALE

89.     Prima incorporates by this reference all preceding paragraphs.

90.     Defendants Enerplus and PetroShale, by and through the fraudulent and tortious conduct pled above, have acquired or pilfered monies to which they are not entitled.

91.     In the event that no remedy is available at law, an equitable accounting is necessary to calculate the nature and extent of monies and other benefits acquired through Defendants' wrongful conduct.

92.     Due to large sums at issue and complex nature of their calculation, discovery is necessary to permit Prima and the trier of fact to evaluate the extent of funds Enerplus and PetroShale obtained through their wrongful conduct.

93.     An accounting is necessary to allow Prima to obtain justice in this action.

## THIRTEENTH CAUSE OF ACTION:
## EXEMPLARY DAMAGES AS AGAINST ENERPLUS AND PETROSHALE

94.     Prima incorporates by reference all preceding paragraphs.

95.     North Dakota law allows for the award of exemplary damages for the breach of an obligation not arising from contract, where a party is found to have acted with oppression, fraud, or actual malice by clear and convincing evidence.

96.     Enerplus and PetroShale have oppressed Prima by consciously disregarding Prima's rights and interests in conspiring with the BIA to divest Prima of its leasehold interests.  In so doing, Enerplus and PetroShale acted with ill will and/or wrongful motive to harass, annoy, and injure Prima.  Moreover, Enerplus and PetroShale provided communications and documents in support of their conspiracy to strip Prima of its rights and interests which included knowingly false misrepresentations.

97.     Exemplary damages are warranted to punish and deter the oppression, fraud, and actual malice exhibited by Enerplus and PetroShale in depriving Prima of its rights and interests.

## FOURTEENTH CAUSE OF ACTION:
## PRELIMINARY INJUNCTION AS AGAINST ALL DEFENDANTS

98.     Prima incorporates by this reference all preceding paragraphs.

99.     There is substantial likelihood that Prima's claims will succeed on their merits.

100.    Absent injunctive relief, Prima will suffer irreparable injury.

101.    Absent injunctive relief, the public interest will be impaired by and through loss of trust in, and the predictability of, the reliable enforcement of valid contracts with leaseholders as managed by the BIA as trustee.

102.  If that irreparable harm and injury continues to occur, Prima asks that the Court halt further oil and gas development affecting the subject properties. To the extent production continues, for an order requiring the placement of all revenues with a third person or entity, acceptable to Prima and the Court, pending resolution of these proceedings through judgment and appeal.

## REMEDIES AND PRAYER FOR RELIEF

WHEREFORE, Prima prays that this Court enter a judgment in its favor that includes the following:

1.    An order setting aside and vacating the BIA's decisions "segregating" and "terminating" Prima's Lease and an order declaring that the Prima's Lease is valid, is in full force and effect, and has not in any way been "segregated" or "terminated."

2.    An order imposing injunctive relief, including a preliminary injunction, halting further oil and gas development affecting the subject properties. To the extent production continues, for an order requiring the placement of all revenues with a third person or entity, acceptable to Prima and the Court, pending resolution of these proceedings through judgment and appeal.

3.    An award of all damages arising from the wrongdoing of Enerplus and PetroShale.

4.    A disgorgement of gains secured or enjoyed by Defendants Enerplus and PetroShale by and through their fraudulent, tortious, and otherwise wrongful conduct.

5.    An order requiring the accounting of revenues and profits obtained through Defendants' fraudulent, tortious, and otherwise wrongful conduct.

6.      An order for restitution based upon Defendants Enerplus and

PetroShale's unjust enrichment at Prima's expense.

7.      For Prima's attorney fees and costs of suit.

8.      For any other relief, legal or equitable, that the Court deems

appropriate, including, as necessary, the imposition of a constructive trust.

Dated this 26th day of August, 2022.

> CROWLEY FLECK PLLP
>
>      /s/  Jeffery J. Oven
> JEFFERY J. OVEN (#5005)
> COLBY BRANCH (#05747)
> joven@crowleyfleck.com
> cbranch@crowleyfleck.com
> 490 N. 31st St., Ste. 500
> P. O. Box 2529
> Billings, MT  59103-2529
> (406) 252-3441
>
> BENJAMIN J. SAND (ND ID #07981)
> bsand@crowleyfleck.com
> 100 West Broadway Ave., Suite 250
> P.O. Box 2798
> Bismarck, ND  58502-2798
> (701) 223-6585
>
> *Attorneys for Plaintiff*